UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STANLEY MILLER,

    Petitioner,                                      Civil Action No. 10-CV-13638

v.

                                              HON. BERNARD A. FRIEDMAN

THOMAS K. BELL,

    Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

**I. Introduction**

Petitioner Stanley Miller has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of three counts of first-degree criminal sexual conduct following a jury trial in Branch County Circuit Court in 2001 and was sentenced to concurrent terms of 30 to 55 years' imprisonment. He raises claims concerning the validity of a search warrant, prosecutorial misconduct, ineffective assistance of trial and appellate counsel, and the validity of his sentence. Respondent has answered the petition and requests that it be denied. For the reasons stated below, the court shall deny the petition, deny a certificate of appealability, and deny leave to proceed *in forma pauperis* on appeal.

**II. Facts and Procedural History**

Petitioner's convictions arise from his sexual assault upon a teenage girl in Kinderhook Township, Branch County, Michigan, in the summer of 2001. The Michigan Court of

Appeals described the relevant facts as follows:

> At approximately 1:30 a.m. on June 13, 2001, the second day of the sixteen-year-old victim's summer vacation from school, she left her family home to retrieve a compact disc from her automobile. When the victim walked between her house and the garage, someone picked her up and placed a hand over her mouth. The person, who the victim later determined was a man, carried her around to the side of the house. The victim struggled and began experiencing difficulty breathing. The man threatened her with death. During the incident, the victim noticed that her attacker was wearing ankle-high work boots. She also saw the man's hands and determined that he was Caucasian.
>
> At some point, the victim fell down by an air conditioning unit. Her glasses were knocked off of her face and her shirt was pulled over her head. She felt the man's chest press against her back and noted that it was bare and was hairy. She concluded that the man was naked except for his boots. She estimated that his height was five feet, nine inches, and she believed that he had shoulder-length hair and facial stubble that was three to five days old.
>
> The man forced the victim onto her neighbor's property and to an area near the lake. He removed her pants and underwear. He penetrated her vagina with his fingers, placed his mouth on her vagina, and later penetrated her vagina with his penis. The victim felt cement on her back during the assault. She testified that, in response to her crying, the man told her to "shut up" and threatened her with death.
>
> After assaulting the victim, the man forcibly walked the victim to another area and debated whether to kill her. Eventually, he made her get on the ground, told her to stay down and count to one hundred, and threatened to return to kill her if the police came to her house. The victim counted to one hundred before getting up and going home. She was afraid to tell her parents what occurred because she believed the man would return to her house as promised. When the victim's sister returned home at approximately 2:30 a.m., the victim broke down and recounted the incident. The victim was in shock and was terrified. Her sister notified their parents.
>
> After the police were notified, a rape kit procedure was completed on the victim. The victim suffered two vaginal tears, an abrasion on her back, a scratch on her face, and psychological trauma, which necessitated drug therapy and counseling. She later became suicidal.

The police investigated the area near the victim's house shortly after being informed of the incident. They noted footprint paths in the dewy grass, which led to an area by the neighbor's concrete slab where the victim believed the assault occurred. An evidence technician determined that someone knelt on the ground, rubbing or moving his knees near the concrete slab. He opined that whoever committed the crime would have injuries to his knees.

The police also canvassed the neighborhood. The victim's only immediate neighbor informed the police, and testified at trial, that at approximately 1:45 a.m., she heard noise outside of her home. She could not understand what was being said, but she heard a disciplinary-type tone being spoken and she heard whimpering. She did not investigate because she assumed that a neighbor was disciplining a new puppy. The police also spoke with Adam Carpenter. He informed the police, and testified at trial, that at approximately 12:30 a.m. on June 13, 2001, he went to the storage barns located near the entrance of the lengthy street where both he and the victim lived. He saw a car parked near the storage area. He wrote down the license plate number, the color, and type of car. It was a red Nissan 300ZX with an Indiana license plate. Carpenter had a habit of writing down information whenever he saw a suspicious car in the area. At approximately 2:30 a.m., while returning home from a friend's house, Carpenter noted that the car was no longer parked by the storage area. The police also received information that a third person in the neighborhood saw a car parked by the storage area at approximately 1:45 a.m. When the police used a K-9 to track at the scene, the dog tracked a scent from the area where the assault occurred to an area by the storage barns. The track actually went behind a shed, came out in front of a shed, and abruptly stopped at the roadway.

The license plate of the red car was registered to a business in Steuben County, Indiana. Two Michigan State Police troopers and a Michigan State Police detective went to the business and learned that the vehicle belonged to defendant. Defendant agreed to speak with the officers, but not before he tried to leave the premises through a side door. He was extremely nervous and shaking uncontrollably. The officers noted that his physical characteristics were similar to those described by the victim. Defendant admitted that he was parked near the storage area the previous night, but he claimed that he met a married woman there and spent the evening with her. He did not provide a full name for the woman. When defendant showed his legs to the officers, they noted that he had fresh scrapes and marks around

> his knees. Bodily samples were subsequently taken from defendant under authority of a search warrant.
>
> Laboratory analysis of the victim's vaginal swab revealed evidence of saliva, which indicated that oral sexual conduct may have occurred. Defendant's penile swab contained mixed DNA. The male fraction of the DNA matched defendant's DNA. The female fraction matched the victim's DNA with a probability of 1 in 50.2 quadrillion in the Caucasian population, 1 in 1.2 quintillion in the African-American population, and 1 in 352.4 quadrillion in the Hispanic population. The DNA profile that matched the victim on defendant's penile swabs was a very rare profile. The expert testimony of DNA evidence offered by the prosecution was unrebutted by the defense.
>
> In defendant's opening statement, counsel admitted that there was sexual contact with the victim on the night of the incident. In monitored telephone calls made by defendant from the Branch County Jail to his girlfriend, defendant suggested that the victim "came on" to him and that he did not know how old she was until the police told him. At trial, defendant offered numerous witnesses to testify about his nonviolent character, and his counsel argued that any sexual contact with the victim was consensual. The jury convicted defendant as charged.

*People v. Miller*, 2003 WL 22399316, at **1-3 (Mich. Ct. App. Oct. 21, 2003). The trial court departed upward from the recommended guideline range and sentenced petitioner to concurrent terms of 32 to 55 years' imprisonment.

Following sentencing, petitioner filed an appeal of right with the Michigan Court of Appeals, raising claims concerning the validity of the search warrant, prosecutorial misconduct, the upward sentencing departure, and a fee assessment.. The court affirmed petitioner's convictions but remanded for resentencing because the trial court failed to articulate sufficient reasons for its upward departure from the state sentencing guidelines. *See id*. at **9-10. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *See People v. Miller*, 470 Mich. 860 (2004).

The trial court resentenced petitioner on June 25, 2004, to concurrent terms of 30 to 55 years imprisonment. Petitioner filed an appeal of right with the Michigan Court of Appeals challenging his sentence. The court again found that the trial court failed to provide sufficient reasons for its upward departure, vacated petitioner's sentences, and remanded for resentencing. *See People v. Miller*, 2006 WL 173175 (Mich. Ct. App. Jan. 24, 2006). The trial court resentenced Petitioner on March 6, 2006, to concurrent terms of 30 to 55 years imprisonment. Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals challenging his sentence, which was denied for lack of merit in the grounds presented. *See People v. Miller*, No. 279366 (Mich. Ct. App. Feb. 8, 2008). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *See People v. Miller*, 482 Mich. 987 (2008).

Petitioner subsequently filed a motion for relief from judgment with the state trial court raising claims concerning the effectiveness of trial and appellate counsel and the constitutionality of his sentence. The trial court denied the motion. *See People v. Miller*, No. 01-08-7368 FC (Branch Co. Cir. Ct. Oct. 13, 2009). Petitioner filed an application for leave to appeal with the Michigan Court of Appeals, which was denied for failure to "meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Miller*, No. 295528 (Mich. Ct. App. Jan. 25, 2010). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied. *See People v. Miller*, 488 Mich. 852 (2010).

Petitioner thereafter filed his federal habeas petition asserting that he is being held in violation of his constitutional rights. Petitioner did not specifically outline his habeas claims or provide a brief in support of his petition. The court shall presume, as has respondent, that petitioner seeks to raise the same claims presented to the state courts on direct appeal and collateral review of

5

his convictions.   Those claims are:

> I. The trial court failed to suppress evidence seized pursuant to an invalid search warrant.
>
> II. Prosecutorial misconduct during voir dire by improperly disclosing facts of the case, by vouching for Petitioner's guilt, and using a civic duty argument in closing argument.
>
> III. Improperly sentencing above the guideline range.
>
> IV. Petitioner was denied the right to effective assistance of counsel where his trial attorney failed to preserve the prosecutorial misconduct issues and his appellate attorney failed to raise ineffective assistance of trial counsel in his appeal of right.
>
> V. Petitioner was sentenced based on facts not found by the jury beyond a reasonable doubt.
>
> VI. Petitioner's counsel failed to preserve the previous sentencing issue.

Respondent has filed an answer to the petition contending that it should be denied because the claims are noncognizable, procedurally defaulted, and/or lack merit.

### III. Legal Standards

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this case because Petitioner instituted this action after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996). A state court's decision is contrary to clearly established law if it "'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21; *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (*quoting Lindh*, 521 U.S. at 333 n.7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

The Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case

7

for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (*citing Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (*quoting Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008)). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an

8

issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

## IV. Analysis

### A. Search Warrant Claim

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in denying his motion to suppress evidence due to an invalid search warrant. Respondent contends that this claim is not cognizable on federal habeas review.

Federal courts will not address a Fourth Amendment claim upon habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes. *See Stone v. Powell*, 428 U.S. 465, 494-95 (1976). A court must perform two distinct inquiries when determining whether a petitioner may raise a claim of unlawful arrest in a habeas action. First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000).

9

"Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366 F. Supp.2d 524, 527 (E.D. Mich. 2005). This procedural mechanism is a motion to suppress, ordinarily filed before trial. *See People v. Ferguson*, 376 Mich. 90, 93-94 (1965) (describing the availability of a pre-trial motion to suppress); *People v. Harris*, 95 Mich. App. 507, 509 (1980) (analyzing the legality of a warrantless search, seizure, and arrest even though raised for the first time on appeal). Consequently, petitioner is entitled to relief on this issue only if he establishes that he was prevented from litigating the Fourth Amendment issue by a failure of Michigan's procedural mechanism.

Petitioner has made no such showing. The record reveals that he challenged the propriety of the search warrant by filing a motion to suppress the evidence and by pursing a direct appeal in the state courts regarding this issue. The trial court denied his motion, the Michigan Court of Appeals denied relief on the merits, and the Michigan Supreme Court denied leave to appeal. Consequently, it is clear that the Michigan courts were cognizant of petitioner's Fourth Amendment claim and gave him all the process he was due. Under *Stone v. Powell*, petitioner's challenge to the validity of the search warrant is therefore not cognizable on habeas review.

### B. Prosecutorial Misconduct Claims

Petitioner next asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by improperly conducting jury voir dire, by vouching for petitioner's guilt during opening statements and while questioning the detective in charge of the case, by making an improper civic duty argument, and by making a Jeffrey Dahmer reference during closing arguments. Respondent contends that these claims are barred by procedural default and lack merit.

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

The Michigan Court of Appeals rendered the last reasoned opinion on these claims. In denying relief, the court relied upon the failure to object at trial. *See Miller*, 2003 WL 22399316, at *4. The failure to make a contemporaneous objection is an independent and adequate state law ground for refusing to review trial errors. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *People v. Carines*, 460 Mich. 750, 763 (1999); *People v. Stanaway*, 446 Mich. 643, 687 (1994). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See*

11

*McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default. *See Amadeo v. Zant*, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *See McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

In the present case, petitioner alleges ineffective assistance of trial counsel as cause to excuse this procedural default. Petitioner, however, cannot establish that trial counsel was ineffective – or that he suffered actual prejudice – as his prosecutorial misconduct claims lack merit.

The Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012); *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

Petitioner has not shown that the prosecutor engaged in any such misconduct. As explained by the Michigan Court of Appeals in reviewing these claims for plain error, *see Miller*,

12

2003 WL 22399316, at **4-7, much of the conduct at issue was proper and any improper conduct was not so significant as to render the convictions a violation of petitioner's due process rights. In sum, the prosecutor's remarks did not render the trial fundamentally unfair. The prosecution's statements were not misleading or overly prejudicial when considered in context and in light of the record as whole. Any potential prejudice to petitioner was mitigated by the fact that the trial court instructed the jury about the elements of the crime and the burden of proof, and explained that the attorneys' questions and arguments are not evidence. Jurors are presumed to follow the trial court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001); *United States v. Powell*, 469 U.S. 57, 66 (1984).

Moreover, to the extent that any of the prosecutor's conduct could be viewed as rising to the level of constitutional error, any such error was harmless. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007); *Ruelas v. Wolfenbarger*, 580 F.3d 403 (6th Cir. 2009). The prosecution presented overwhelming evidence of petitioner's guilt at trial. There is no reasonable probability that any prosecutorial error affected the jury's verdict. Petitioner has thus failed to establish cause or prejudice to excuse his procedural default.

Petitioner has also not shown that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations

13

of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Id.* at 324. Petitioner has made no such showing. His prosecutorial misconduct claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

### C. Sentencing Claims

Petitioner also asserts that he is entitled to habeas relief because the trial court improperly sentenced him above the recommended guideline range and relied upon facts not proven to the jury beyond a reasonable doubt. Respondent contends that these claims are not cognizable on federal habeas review and/or lack merit.

As an initial matter, the court notes that petitioner's sentences are within the statutory maximums of life imprisonment. *See* MICH. COMP. LAWS § 750.520b(1)(f). A sentence within the statutory limit is generally not subject to federal habeas review. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp.2d 788, 797 (E.D. Mich. 1999). Claims which arise out of a state court's sentencing decision are not cognizable on habeas review unless the petitioner can show that the sentence exceeded the statutory limits or is wholly unauthorized by law. *See Lucey v. Lavigne*, 185 F. Supp.2d 741, 745 (E.D. Mich. 2001). Petitioner has made no such showing.

Moreover, petitioner is not entitled to relief on his claim that the trial court erred in scoring the state sentencing guidelines or imposing a sentence above the recommended guideline range. To the extent that petitioner asserts that his sentence is disproportionate under state law, he fails to state a claim for federal habeas relief. *See Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir.

14

2000). Similarly, any challenge to the trial court's upward departure from the sentencing guidelines is not cognizable on federal habeas review because it is a state law claim. *See Howard v. White*, 76 F.App'x 52, 53 (6th Cir. 2003); *Mitchell v. Vasbinder*, 644 F. Supp.2d 846, 867 (E.D. Mich. 2009). State courts are the final arbiters of state law and federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Habeas relief does not lie for perceived state law errors. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Nor is petitioner entitled to habeas relief on his claim that the trial court erred at sentencing by relying upon facts neither admitted by him nor proven to the jury beyond a reasonable doubt. The United States Supreme Court cases relevant to this issue, such as *Blakely v. Washington*, 542 U.S. 296 (2004), do not apply to Michigan's intermediate sentencing scheme. The United States Court of Appeals for the Sixth Circuit has held that Michigan's sentencing guidelines do not violate the Sixth Amendment because they set a minimum sentence range while the maximum is set by statute. *See Montes v. Trombley*, 599 F.3d 490, 494–98 (6th Cir. 2010); *Chontos v. Berghuis*, 585 F.3d 1000 (6th Cir. 2009). Because petitioner's sentences are within the statutory maximum penalties, which were not enhanced by judicial fact-finding, no Sixth Amendment or due process violation occurred.

### D. Ineffective Assistance of Counsel Claims

Finally, petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to properly object to the alleged instances of prosecutorial misconduct and for failing to challenge the constitutionality of his sentence. He also argues that appellate counsel was ineffective for failing to raising trial counsel's ineffectiveness on direct appeal. Respondent

contends that these claims lack merit.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *See id.* at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair proceeding. *See id.*; *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983).

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential and counsel is presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *See id.* at 689-90.

To satisfy the prejudice prong of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *See id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996).

In the present case, the state trial court (on collateral review) determined that

16

petitioner had not shown that defense counsel's conduct fell below an objective standard of reasonableness. This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Petitioner cannot establish that trial or appellate counsel erred as his underlying prosecutorial misconduct, sentencing, and ineffective assistance of trial counsel claims lack merit. Defense counsel cannot be deemed deficient for failing to make a futile objection or claim. *See, United States v. Steverson*, 230 F.3d 221, 225 (6th Cir. 2000). Moreover, even if counsel erred in some fashion, petitioner has not shown that he was prejudiced by counsel's conduct given the overwhelming evidence of his guilt presented at trial. Petitioner has failed to establish that trial or appellate counsel were ineffective.

## V. Conclusion

For the reasons stated above,

IT IS ORDERED that the petition in this matter for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that no certificate of appealability shall issue, as petitioner has not made a substantial showing of the denial of a constitutional right.

IT IS FURTHER ORDERED that petitioner may not proceed on appeal *in forma pauperis*, as any appeal would not be taken in good faith.


　　　　　　　　　　　　　　　　　　　　S/Bernard A. Friedman
　　　　　　　　　　　　　　　　　　　　BERNARD A. FRIEDMAN
　　　　　　　　　　　　　　　　　　　　SENIOR UNITED STATES DISTRICT JUDGE

Dated: August 9, 2012
　　　　Detroit, Michigan